FITCHETT v. MURPHY et al.

(Supreme Court, Appellate Division, Second Department.   December 5, 1899.)

1. CORPORATIONS—MINORITY STOCKHOLDERS—EXORBITANT SALARIES—RESTRAIN-
    ING PAYMENT OF.
        In an action by a minority stockholder of a corporation to restrain
    payment of certain salaries claimed to be exorbitant, it must be al-
    leged and proved that plaintiff applied to the corporation for redress,
    or that a demand to sue was made on the corporation, which was re-
    fused, before he can sue in his own name.

2. SAME—RIGHT TO MAINTAIN ACTION—STOCKHOLDER AT TIME..
        Since the right of one, who claims that he has been defrauded of his
    interests in the corporate assets, to maintain an action to restrain the
    further payment of exorbitant salaries is incident to the ownership of
    stock in the corporation, such person must be a stockholder at the time of
    the institution of the action.

8. SAME—FIXING SALARIES—POWER OF COURT.
        Since the fixing of salaries of the directors and officers of a corporation
    is a matter within the powers of the directors themselves, subject to
    review by a court of equity, the court has no power, in an action by
    a minority stockholder to restrain the payment of exorbitant salaries,
    to fix a gross sum to be divided as salaries among the directors and officers.

Appeal from special term.

Action by Margaret Fitchett, as administratrix of George H. Fitch-
ett, deceased, against Thomas J. Murphy, Bernard Link, William
P. Fay, and the American Billposting Company of the City of Brook-
lyn, to restrain defendants Murphy, Link, and Fay from paying to
themselves salaries alleged to be exorbitant.   From a judgment for
plaintiff (56 N. Y. Supp. 322), defendants appeal.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Charles F. Brown, for appellants.
Hugo Hirsh, for respondent.

GOODRICH, P. J.   The action is brought by a minority stock-
holder in the American Billposting Company of the City of Brooklyn
to restrain the defendants Murphy, Link, and Fay from paying to
themselves certain salaries, which are claimed to be exorbitant.   The
testimony shows that prior to August, 1894, Murphy was engaged
in the billposting business in Brooklyn, having a somewhat valuable
plant, consisting of billboards, leases, fences, advertising privileges,
and regular custom therein.   George H. Fitchett, the plaintiff's in-
testate, and the defendants Link and Fay, together with one Coutrier,
had organized a similar business in opposition to Murphy.   In Au-
gust the parties came together to form a corporation for the purpose
of taking over the business of both parties by organizing the defend-
ant corporation.   The certificate of incorporation shows that the
corporation was organized with a capital stock of $9,000 (90 shares, of
the par value of $100 each).   Fitchett, Murphy, and Link were named
as directors.   The stock was subscribed for, Murphy taking 30 shares,
and the other four persons each 15 shares.   At the first meeting of
the directors, in September, 1894, Fitchett was elected president,

Coutrier vice president, Murphy treasurer, Link manager, and Fay secretary. The salaries of Fitchett as president, Coutrier as vice president, Fay as secretary, and Link as manager, were fixed at $50 per week, and that of Murphy, as treasurer and director in general, at $100 per week. The same persons remained officers of the corporation until April 8, 1897, when Murphy, Coutrier, and Link were elected directors. These directors, at their first meeting, elected Murphy president, Coutrier vice president, Link treasurer and manager, and Fay secretary; and fixed the salary of Murphy at $100 per week, that of Link at $80, and of Fay at $50. Subsequent to the last meeting of the directors, Coutrier sold his stock to one Hyde, and, as his office of director was vacated by such sale, the directors, on May 1, 1897, elected Fay as his successor; and the salaries of Murphy as president and Link as general manager were continued, and a salary of $50 per week voted to Link as secretary and solicitor. No salary was voted to Fitchett. The minutes of the meeting show that each of these three persons refrained from voting upon the question of his own salary. Fitchett died on June 8, 1897. The summarized accounts of the company's affairs show the following facts:

Summary of Profit & Loss Account of the American Billposting Company. Aug. 21, 1894, to Aug. 26, 1898.

| Year Ending August. | Income. | Expenses. | Profit from Operations. | Salaries of Officers. | Net Profit. |
|---|---|---|---|---|---|
| 1895 | $ 48,301 81 | $ 27,588 51 | $ 20,713 30 | $ 15,000 00 | $ 5,713 30 |
| 1896 | 53,690 47 | 33,428 53 | 20,261 94 | 15,000 00 | 5,261 94 |
| 1897 | 67,450 19 | 39,119 57 | 28,330 62 | 14,270 00 | 14,060 62 |
| 1898 | 66,089 56 | 42,537 18 | 23,552 38 | 12,190 00 | 11,362 38 |
| Total. | $235,532 03 | $142,673 79 | $ 92,858 24 | $ 56,460 00 | $36,398 24 |

The court found, as matter of fact, that the salaries were voted and paid as a method of division of earnings, and not as compensation for services, and that under this method all of the stockholders were paid in proportion to their holdings of stock; that these payments were not for services to be rendered, and that services were not rendered as an equivalent for them. The judgment provided that the defendants Murphy, Link, and Fay refund to the defendant corporation the sums of money drawn by them, respectively, for salaries since the date of the trial (January 27, 1899), and that thereafter the corporation be authorized to pay such sums for salaries for its officers as it may deem proper, not to exceed in the aggregate $5,500 per year, which sum was declared to be a fair compensation for all such officers, including their expenses in defending this action, and was to be divided among the officers according to their actual services in the company, as they may decide; and the company was restrained from paying any expense incurred in the defense of the suit. From this judgment the defendants appeal.

This is one of those cases where the majority of stockholders have entered into a combination to control the affairs of the corporation for their own benefit, and in fraud of the rights of the minority. Such a combination will always be rebuked by a court of equity. It is not necessary to restate well-settled principles upon this subject, and therefore no reference is made to authorities. Here is a corporation with a capital of $9,000, which has paid to its stockholders and officers, under the guise of salaries, an average of $14,000 per year for four years, when it appears that most of the work was done by one of the persons receiving salary; in addition to which the company has accumulated a surplus of more than $36,000, constituting a clear profit on the business of, approximately, $75,000. Nothing appears in the record to show a probable diminution of the profits, and in these profits the stockholders have a right to a proportionate share. No action by the directors, and no combination among any of them, can be permitted to invade the rights of the plaintiff and the minority stockholders in the corporation. So long as all the parties in interest—incorporators, stockholders, directors, and officers—assented to the scheme for the distribution of assets by the payment of salaries, the plan was unobjectionable; and that state of affairs continued until the original plan for the personnel of the directors was changed in April, 1897, and a change was made in the officers, and the salary of Fitchett was suspended. From that time the actions of the defendants must be regarded as hostile to the interests of Fitchett. It is not difficult to discover a plan to "freeze out" Fitchett, and exclude him from all benefits except such as might be derived from the payment of dividends. The only dividend ever declared by the corporation was one of $12\frac{1}{2}$ per cent., in 1898. Meanwhile Murphy, Link, and Fay continued to receive their salaries. It does not appear that they rendered any services as officers sufficient to justify the large salaries paid them; and the payment of such salaries, voted by the defendants to themselves, is not justified by any evidence of services rendered in their offices. The learned court, in its opinion, correctly held that:

"Directors of a corporation have no right to vote salaries to one another as mere incidents to their office, as was done here. They are not, however, debarred from becoming employés of the corporation, and they are entitled to a reasonable compensation for their services as such. But as, in fixing their compensation, they are in the position of trustees dealing with themselves in respect of their trusts, their action is subject to question by the stockholders, or to review by the court of equity at the suit of a stockholder. In case of a large board of directors the fixing of a salary of one of their number for prescribed services might be deemed conclusive, where the influence of one employed was not a factor therein. This case is quite different."

We have stated somewhat fully our views on the facts of the controversy, because, for the reasons hereafter given, we are led to reverse the judgment. In the first place, there is no averment in the complaint or evidence in the record that the plaintiff or her intestate ever applied to the corporation for redress, or to bring an action similar to the present one. In Flynn v. Railroad Co., 158 N. Y. 493, 53 N. E. 520, it was held that where a plaintiff, suing

as a stockholder, claims that he has been defrauded of his interest in the corporate assets, the action is not for his benefit alone, but is representative in character, and for the benefit of the plaintiff and all stockholders similarly situated; and that in such an action an averment of a demand to sue, made upon the corporation, together with its refusal or unreasonable neglect so to do, is essential to enable the plaintiff stockholder to sue in his own name. It may be that such a demand was made, or that facts may be alleged which will obviate the necessity of such demand and refusal, but it is essential that one or the other state of facts be alleged and proved.

In the next place, there seems to be a fatal defect in the plaintiff's case, both in her pleading and in her proof. Her cause of action is derivative. Alleging misconduct of the defendants, even during her intestate's life, did not give him any personal claim which, as property, could pass to his administratrix. To bring an action of this kind, a person must be a stockholder at the time of the institution of the action. The right of action is incident to the ownership of the stock, for it is to compel a restoration of property acquired through a past wrong on the corporation, not on the stockholder individually, or to prevent future injury to the corporation, that such an action is maintainable. The allegations of the complaint are that the husband was a stockholder "up to about the 1st day of May, 1897,"—a period of one month before his death. It is not alleged that he was the owner and holder of the stock at the time of his decease, or that the plaintiff, as his administratrix, is such owner; nor does the plaintiff offer any testimony to supply this defect.

We are of opinion that it was not within the power of the court to fix even a gross sum to be divided as salaries among the directors and officers, for this is a matter within the powers of the directors themselves, subject, of course, to review and approval or disapproval by a court of equity. We think, also, that, instead of allowing the defendants to retain the moneys received by them between the date of Fitchett's exclusion from participation in the affairs of the company, namely, April 8, 1897, and the date of the trial, namely, June 27, 1899, the judgment should have compelled an accounting from the first date, April 8, 1897.

We do not further review the merits of the controversy than to say that the evidence seems rather meager and unsatisfactory as a foundation for the decision of a court, which fact the trial justice appreciated. The corporation was peculiar. Its large profits accrued probably not only from the investment of the capital in the ordinary management of the corporation, but also, to some extent, from the individual efforts of the directors. Why the plaintiff's husband ceased to be a director does not appear. Whether he refused to perform his work, and therefore his associates refused to continue him in office, or whether, on the other hand, anxious and willing to work, he was excluded solely with the idea of depriving him of his interest in the profits of the corporation, is not certain on the printed evidence. On a new trial all these deficien-

cies may be supplied, and we think justice requires that disposition of the case.

For these reasons, the judgment should be reversed, and a new trial granted, with leave to the plaintiff to apply at special term for permission to amend the pleadings in accordance with this opinion, and with costs to abide the final award of costs. All concur.